MARGARET E. BEAGAN *vs.* CITIZENS SAVINGS BANK.

JUNE 6, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This bill in equity, which seeks to restrain the foreclosure of a certain mortgage on complainant's real estate, was heard in the superior court on bill, answer, and proof. At the conclusion of that hearing, the trial justice denied and dismissed the bill and a decree to that effect was duly entered. The cause is now before us on complainant's appeal from that decree.

This cause is a sequel to the case of *Beagan* v. *Citizens Savings Bank,* 68 R. I. 509, where we denied and dismissed a similar appeal by the complainant concerning the same mortgage. After that decision, she entered into certain other agreements with the respondent in reference to the payment of the mortgage, the alleged breach of which agreements gave rise to the present cause.

The mortgage is dated October 4, 1940 and was given to secure complainant's promissory note of even date for $5400, with interest at the rate of 5% per annum payable semiannually in advance. Our decision in the prior cause was rendered on January 15, 1943. Unless otherwise specified, all dates hereinafter mentioned refer to 1943:

On February 16, following certain preliminary negotiations, the respondent consented to discontinue the then pending foreclosure sale set for that day upon payment by the complainant of $2300 and upon the express condition

that thereafter she make certain monthly payments on the mortgage, which payments were to include payments on the principal, interest and taxes. This compromise was reduced to writing and an agreement to that effect was executed by her on that day at the office of the attorneys for the respondent, where she had gone in company with her two sons, both of whom are lawyers. It also appears that at that same time and place she and her sons signed a paper under seal, which is termed a guarantee by the parties in connection with the main agreement. The transcript before us shows that her sons were with her at all times during the conference that preceded the signing of the agreements; that the sons had full opportunity to examine the written agreements before they were signed; and that she signed the agreements after they were explained to her by the sons and with their consent. The sum of $2300 was paid by her on this day.

The main agreement provided that the complainant would make monthly payments on the mortgage, which payments were to be applied "first to the payment of interest at the rate of five (5) per cent per annum, computed monthly not in advance, and only the balance to be applied to the payment of principal"; that each month, in addition thereto, she would pay a certain amount which the respondent was to hold on deposit for the payment of accruing taxes; and that in case of default the respondent might apply "any sums so held in its discretion to principal, interest, taxes, insurance or repairs to the property." This agreement further provided that the first payment thereunder was payable on March 16, with a grace period of fifteen days as to each payment, and that the respondent, if it elected so to do, might at any time resort to the terms and conditions as specified in the original mortgage and note.

The amount of the monthly payment on principal and interest and the amount of the monthly deposit for taxes were not specified in this agreement because there was no time on that day to consult the records of the bank if the

foreclosure sale, which was set for that afternoon at 2 o'clock, was to be discontinued, as the complainant desired. It was therefore agreed that, within the next few days, the respondent would send to the complainant such information, together with a statement of all receipts and expenditures in connection with the mortgage.

The above-mentioned statement, which included the $2300 paid by the complainant on February 16, was inclosed in respondent's letter to her of February 17. The letter advised her that the respondent had paid the 1942 taxes, then overdue; that it had set aside the sum of $106.90 as an "escrow fund" for taxes coming due in 1943, and that, after the payment of all other charges then due and payable, there remained a balance of $415.08, which amount it had applied to the principal of the mortgage. The letter also stated that the balance of the mortgage was then $4984.92. It concluded as follows: "We are now preparing a schedule of the monthly payments, which we will forward to you in the next few days. If there is anything you do not understand, we shall be glad to discuss this matter with you further."

In its letter to the complainant of February 20, the respondent inclosed a schedule of monthly payments for interest and principal on the mortgage from March 16, 1943 to February 16, 1944, and advised her that at the expiration of this period she would receive another schedule. This letter also called her attention to an additional monthly payment for taxes in the following language: "You will note at the bottom of the schedule that $21.38 per month is to be added to cover taxes." The schedule shows that the monthly payments on the mortgage ranged from $43.27 to $42.24 for the specified period. The note to the schedule reads: "To the above amounts add $21.38 per month for taxes to make up the total monthly payment."

These letters and inclosures were admittedly received by the complainant and no explanation was asked nor complaint made by her concerning any matter therein set forth.

On March 27 the bank received a payment of $64.65, which included the sum of $21.38 for taxes. No payments having been made for the months of April or May, the respondent threatened foreclosure proceedings. Upon receipt of this letter, one of complainant's sons, on May 20, wrote a letter to the respondent in which he stated that when the complainant paid the $2300 she "did not intend or direct the creation of any escrow account." He therefore demanded that the sum in that account, which the respondent was holding on deposit for the payment of the 1943 taxes, be applied to the monthly payments on the mortgage.

In its letter of the following day, the respondent referred the complainant to the main agreement of February 16 and to the communications that followed. It also notified her that it was commencing foreclosure proceedings. This led to further negotiations. The respondent finally, by its letter of May 25, informed the complainant that as there appeared to be some misunderstanding on her part respecting the withholding of $106.90 for the 1943 taxes out of the $2300 payment which she had made on February 16, it was willing that such sum be applied toward the April 16th and May 16th payments due under the mortgage loan agreement, provided it received from her a sufficient amount to make up said two monthly payments. But the respondent also clearly advised her in this letter that a portion of the monthly payments received from her would be held by it in an escrow account which it had set up for the payment of taxes, and that the suggested arrangement did not in any way alter or modify the agreements signed by her on February 16, 1943.

The total amount then overdue for the months of April and May, including $21.38 each month for taxes, was $130.31. Applying the $106.90 to this amount, there was a deficiency of $23.41, which the complainant paid on May 25, thereby bringing the payments on the mortgage up to date in accordance with her agreement, with the sum of

$85.52 to her credit in the escrow account for the payment of the 1943 taxes.

The payment due June 16, which included the amount for taxes, was made by the complainant on July 1 without protest, or request that the respondent pay over to her the $85.52 in the escrow account, or demand that it apply such sum to the principal and interest of the mortgage. Receiving no further payments after July 1, the respondent, by letter dated August 17, notified the complainant that it had commenced foreclosure proceedings, with the sale set for September 8 at 11 o'clock. The complainant then brought the present bill.

The bill, in substance, alleges that the complainant paid the $2300 on February 16 with the understanding that such payment would remove all defaults and reinstate the mortgage in accordance with its original terms; that she, being then under great stress because of the then pending foreclosure sale, was "forced" to consent to the change effected by the "so-called monthly payment plan" of that date; that, after accepting said sum of $2300, the respondent "arbitrarily refused to apply the same" as stipulated in the mortgage; and that, if all payments which she had made were so applied, there would be no default under the mortgage.

Complainant's two sons, one of whom was admittedly her agent throughout this transaction, testified in the superior court. She, however, did not testify, nor was any reason given for her nonappearance as a witness, notwithstanding the fact that she was the one who, on February 16, had executed the main agreement involved in this cause. All the written evidence in the record before us was produced by the respondent.

At the conclusion of that hearing, the trial justice found that the meeting of the parties on February 16 was "very quiet and harmonious"; that the documents then executed were carefully scrutinized by one of complainant's sons and the effect thereof was "translated" to her by him; that she

was "properly and carefully advised by her two lawyer sons"; that neither she nor they made any complaint of overreaching at that time; and that she then executed the documents "without duress or coercion of any kind." Considering the further fact that she thereafter made several payments in accordance with the schedule which she had accepted without objection, he decided that the mortgage was in default under her agreement of February 16 and therefore denied and dismissed the bill.

A careful consideration of all the evidence furnishes us no cause to disagree in any way with the findings of fact and decision of the trial justice. Even if it were possible to disregard the agreements which the complainant executed singly and in conjunction with her sons on February 16 and apply against the original mortgage all sums paid by her after that date, including the moneys for taxes in the escrow account, respondent's computation of the application of such sums, which is not denied by any competent evidence, still leaves her in default under the terms of the mortgage when the respondent commenced the foreclosure proceedings involved in this cause.

The appeal of the complainant is denied and dismissed; the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Joseph E. Beagan,* for complainant.

*Henshaw, Lindemuth & Siegl, Benjamin F. Lindemuth,* for respondent.